UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, Plaintiff, vs. **CARL JOSHUWA-LABELLE BROWN**, Defendant. | 2:18-CR-20293-TGB  **ORDER DENYING MOTION FOR COMPASSIONATE RELEASE** |

On September 28, 2020, Carl Joshuwa-Labelle Brown filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 47. The Court ordered supplemental briefing on several issues. ECF No. 53. Having considered the materials submitted by both parties as well as publicly available data, the Court now **DENIES** his motion for compassionate release.

## I.  BACKGROUND

Mr. Brown is a 32-year-old Black man with hypertension and obesity. He is currently serving a 54-month term of imprisonment related to identity theft and wire fraud charges. In March 2020, after an unsuccessful attempt to complete a back surgery related to an accident from the year prior, Mr. Brown reported to FCI Cumberland to begin serving his sentence. ECF No. 47, PageID.128-130.

1

## II. DISCUSSION

At this point in the COVID-19 pandemic, the legal standards for evaluating motions for compassionate release are well established. In deciding whether Mr. Brown is eligible for compassionate release under 18 U.S.C. § 3582(c), the Court must determine (1) whether he has exhausted his administrative remedies, (2) whether there are "extraordinary and compelling reasons" that warrant his release, and (3) whether his release would be consistent with the factors set forth in § 3553(a). *See, e.g., United States v. Agomuoh*, 461 F. Supp. 3d 626, 629-30 (E.D. Mich. 2020); *United States v. Mitchell*, 472 F. Supp. 3d 403, 406 (E.D. Mich. 2020); *United States v. Elias*, 984 F.3d 516, 519-20 (6th Cir. 2021) (clarifying that the factors in U.S.S.G. § 1B1.13 are no longer a required component of the compassionate release motion analysis).

### A. Eligibility for consideration of motion

The government concedes that Mr. Brown has exhausted his administrative remedies. ECF No. 50, PageID.350. It also concedes that his medical conditions of obesity and hypertension qualify as "extraordinary and compelling reasons" necessary to consider release. *Id.* at 355. Therefore, the Court need only consider the extraordinary and compelling reasons for release and whether release would be consistent with the § 3553(a) factors.

In addition to his pre-existing conditions of obesity and hypertension, Mr. Brown also urges the Court to consider the issue of a back surgery

2

that he was recommended to undergo by his physician prior to beginning his sentence. He contends that undergoing the surgery while in BOP custody would increase his chances of contracting COVID-19 (due to transport to and from the surgery facility) and that he would be unable to properly care for himself post-surgery in BOP custody. ECF No. 47, PageID.144-48. The government replies that it is not yet confirmed that Mr. Brown's surgery is medically necessary, but that if it is, BOP staff will follow all post-operative care instructions from the treating physician. ECF No. 54, PageID.419.

Mr. Brown's contention that undergoing back surgery while in BOP custody presents at least some potential for increased exposure to COVID-19 is not a baseless concern, as such a course would require transportation and admission to a new medical facility in order to have the operation. But the record does not indicate that risk to be significantly greater than the risk he would face of contracting COVID-19 if he were to be released and then admitted to a hospital to have this same surgery and subsequent treatment. Additionally, and perhaps more importantly, it is unclear whether this surgery is truly medically necessary. Given these circumstances, the Court does not give significant weight to the surgery as a reason for granting release.

B.    Section 3553(a) factors

The next consideration is whether Mr. Brown's release would be consistent with the factors set forth in § 3553(a). The Court finds that,

3

given his history, Mr. Brown's health considerations cannot overcome the potential for danger to the community if he were to be released at this time. 18 U.S.C. § 3553(a)(1). Mr. Brown has a long history of state criminal conduct and convictions.[1] Most significantly, the Court notes that the identity theft and financial crimes charged in this case involve conduct that began in June 2017, only one month after Mr. Brown completed a parole term for a state conviction involving a similar offense. ECF No. 50, PageID.368-74. The record thus shows that Mr. Brown rapidly became re-involved in criminal activity as soon as he was no longer under supervision. To this concern, the Court adds the fact that Mr. Brown has currently served only ten months of his 54-month sentence, or about 18.5% of the term. To reduce Mr. Brown's sentence so dramatically would not be consistent with the goals of deterrence and protection of the public from further crimes found in § 3553(a).

### C. COVID-19

This Court is also taking into account the severity of COVID-19 incidence at FCI Cumberland, where Mr Brown is incarcerated. While this motion has been pending, the situation at Cumberland has changed rapidly. Examining the publicly available data, there was a sharp

---

[1] Mr. Brown correctly points out that some of his prior arrests referenced by the government did not lead to convictions. But the Court finds that they are nevertheless appropriate to consider when evaluating dangerousness to the community in the context of a release motion (even though they would not be considered in, for example, a sentencing decision).

4

increase in cases in December, a low incidence for a period of about three weeks, and then another rise in cases that began on January 14, 2021:



*See* Pandemic Response Oversight, Dashboards of BOP COVID-19 Cases, https://perma.cc/83TS-WCPE. It is impossible to determine whether and to what level cases may continue to rise. The facility was in lockdown for at least some period of time in December, during which Mr. Brown did not contract the disease, although two individuals down the hall from him did. ECF No. 54, PageID.416; ECF No. 55, PageID.425.

## CONCLUSION

Although the Court concludes that Mr. Brown is not eligible for release, this is a close call, and the Court wishes to highlight its ongoing concerns about how BOP facilities such as FCI Cumberland are responding to the COVID-19 pandemic. The Court asked for supplemental briefing on this issue, and in its brief the government asserted that "the BOP confirmed . . . it was in fact following . . . CDC guidance" regarding correctional facilities at FCI Cumberland. ECF No. 54, PageID.414. This guidance directs facilities, among other

recommendations, to ensure inmates can social distance, to provide a "sufficient supply of soap for each individual," to "provide masks at no cost . . . and launder them routinely." *See* Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, https://perma.cc/78PT-PR3L.

Yet Mr. Brown alleges he has only one mask that can only be infrequently washed, no access to adequate disinfectant to clean his cell, and no way to practice social distancing per CDC guidelines. ECF No. 47, PageID.144; ECF No. 54, PageID.425; ECF No. 55, PageID.424-26. These specific allegations are not addressed or refuted by the government, ECF No. 47, PageID.144; ECF No. 54, PageID.425, and Mr. Brown's description of his living conditions is in direct contradiction to the government's representations regarding how FCI Cumberland is handling inmate safety.

During the pendency of this motion, FCI Cumberland experienced one large uptick in COVID-19 cases and is potentially in the middle of another. Given the lockdown protocol, Mr. Brown's current risk of infection seems reduced, which is a factor supporting the result of this Court's decision. However, without more rigorous efforts to implement CDC guidelines, and without timely vaccination of inmates, it seems clear that such outbreaks will continue to occur, and continue to present a danger to inmates.

The compassionate release motion is an imperfect tool to address this problem because the test to be applied measures two qualitatively different factors that are difficult to weigh against each other. It may be true on the one hand that an inmate's health conditions combined with the prevalence of the virus in a prison appear to present real risks of infection that weigh in favor of release, while at the same time an inmate's offense conduct, background, and criminal history may indicate that his early release would pose an undue risk of danger to society. Such a situation is a "Catch-22," where either course presents a risk of harm, either to the inmate or to society. To avoid this dilemma, it is the obligation of the Bureau of Prisons to ensure that those inmates who do not qualify for compassionate release are housed in conditions that genuinely reduce the risk of exposure to the virus—including by making a vaccine available to all prisoners as soon as possible.

Mr. Brown's motion for compassionate release is **DENIED WITHOUT PREJUDICE**.

**SO ORDERED** this 4th day of February, 2020.

BY THE COURT:

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE