UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA

                           Case No. 2:18-CR-20293

v.

                           ORDER ON MOTION FOR
                           SENTENCE REDUCTION UNDER
Carl Joshua-Labelle Brown         18 U.S.C. § 3582(c)(1)(A)

                           (COMPASSIONATE RELEASE)

      Upon motion of ☑ the defendant ☐ the Director of the Bureau of Prisons for a reduction

in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors

provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing

Commission,

IT IS ORDERED that the motion is:

☑ GRANTED

☑ The defendant's previously imposed sentence of imprisonment of _____54 months_____

is reduced to _____. If this sentence is less than the amount of time

the defendant already served, the sentence is reduced to a time served; or

     ☑ Time served.

     If the defendant's sentence is reduced to time served:

          ☑     This order is stayed for up to fourteen days, for the verification of the

                defendant's residence and/or establishment of a release plan, to make

                appropriate travel arrangements, and to ensure the defendant's safe

                release. The defendant shall be released as soon as a residence is verified,

a release plan is established, appropriate travel arrangements are made, and it is safe for the defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure the defendant's safe release, the parties shall immediately notify the court and show cause why the stay should be extended; or

☐      There being a verified residence and an appropriate release plan in place, this order is stayed for up to fourteen days to make appropriate travel arrangements and to ensure the defendant's safe release. The defendant shall be released as soon as appropriate travel arrangements are made and it is safe for the defendant to travel.  There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure the defendant's safe release, then the parties shall immediately notify the court and show cause why the stay should be extended.

☑ The defendant must provide the complete address where the defendant will reside upon release to the probation office in the district where they will be released because it was not included in the motion for sentence reduction.

☐ Under 18 U.S.C. § 3582(c)(1)(A), the defendant is ordered to serve a "special term" of ☐ probation or ☐ supervised release of _____ months (not to exceed the unserved portion of the original term of imprisonment).

☐ The defendant's previously imposed conditions of supervised release apply to the "special term" of supervision; or

☐ The conditions of the "special term" of supervision are as follows:

☑ The defendant's previously imposed conditions of supervised release are unchanged.

☐ The defendant's previously imposed conditions of supervised release are modified as follows:

☐ DEFERRED pending supplemental briefing and/or a hearing.  The court DIRECTS the United States Attorney to file a response on or before _____, along with all Bureau of Prisons records (medical, institutional, administrative) relevant to this motion.

☐ DENIED after complete review of the motion on the merits.

☐ FACTORS CONSIDERED (Optional)

☐ DENIED WITHOUT PREJUDICE because the defendant has not exhausted all administrative remedies as required in 18 U.S.C. § 3582(c)(1)(A), nor have 30 days lapsed since receipt of the defendant's request by the warden of the defendant's facility.

IT IS SO ORDERED.

:

s/Terrence G. Berg
UNITED STATES DISTRICT JUDGE


Dated:   November 22, 2022

4

This is Carl Brown's third motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). For the reasons below, the motion will be **GRANTED**.

*Background*

Brown, a 34-year-old African American male, has a medical history that includes hypertension, smoking, and obesity. He pleaded guilty to wire fraud, identity theft, and money laundering, and on June 17, 2019, was sentenced to a 54-month term of incarceration. The Court imposed a 3-year term of supervised release to follow this period of incarceration. (ECF No. 38.)

In 2019, while he was on bond following his guilty plea, Brown seriously injured his back. A doctor recommended spinal surgery. Brown hoped to undergo this surgery before surrendering himself to the Bureau of Prisons, but he was unable to schedule it. When he began serving his sentence in March 2020, his pain had subsided, so he planned to postpone the surgery until his release. But the pain later returned and worsened.

In September 2020, Brown filed his first motion for compassionate release. (ECF No. 47.) He argued that he needed spinal surgery and that, in combination with the threat from COVID-19 and his other health conditions, this need presented a compelling and extraordinary reason for early release.

The Court denied the motion. *United States v. Brown*, 517 F. Supp. 3d 671 (E.D. Mich. Feb. 4, 2021). It agreed that undergoing surgery in prison carried pandemic-related risks. But Brown had no evidence that those risks were significantly greater than outside of prison—and his medical records did not establish at that point that surgery was medically necessary. After reweighing the § 3553(a) factors, the Court could not conclude that reducing Brown's sentence after he had completed only 10 months of it would adequately further the goals of sentencing.

In May 2021, Brown filed a second motion for compassionate release. (ECF No. 57.) With this motion, Brown submitted diplomas from rehabilitative programming he had completed in prison. (ECF No. 57-7.)

He also submitted updated medical records—including a report from a neurosurgeon, Dr. Or Cohen-Inbar, who opined that surgery was necessary to prevent "irreversible" spinal and neurological deterioration. Dr. Cohen-Inbar stated that he would "not recommend waiting 18 months before decompression [surgery]." (ECF No. 60-1.)

The Court also denied this motion. (ECF No. 68.) The government did not contest that Brown's need for surgery was serious. But the record showed that Brown had declined surgical care available through the prison. Brown's preference to undergo surgery outside of prison was understandable, but without evidence that he could not obtain the care he needed in prison, it did not warrant early release. And, despite Brown's rehabilitative efforts, the § 3553(a) factors still did not weigh in favor of release.

In August 2022, Brown filed a third motion for compassionate release, asserting that—since the denial of his second motion—he had made multiple requests to speak to medical providers about surgery but was unable to get the care he needed. (ECF No. 72.) The government does not contest that Brown properly exhausted his administrative remedies before filing it. *See United States v. Alam*, 960 F.3d 831, 833-34 (6th Cir. 2020). It is this motion the Court now addresses.

*Legal Standard*

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), allows the Court to reduce a defendant's sentence if, "after considering the factors set forth in section 3553(a)," it finds that "extraordinary and compelling reasons" warrant a reduction and the reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." There is currently no applicable policy statement. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

*Analysis*

> *Extraordinary and compelling circumstances for release*

In his motion, Brown renews his contention that his need for spinal surgery is an extraordinary and compelling reason for early release. (ECF No. 72.) He acknowledges his prior refusal to undergo surgery in prison. But, he says, he has since repeatedly spoken to prison healthcare providers and requested care to no avail. He asserts that he is at risk of permanent, irreversible spinal and neurological damage until he receives the surgery he needs.

The government does not dispute that Brown's spinal condition is serious. (ECF No. 78.) It argues, however, that Brown's accusations that the Bureau has been stalling his treatment are unfounded.

After receiving Brown's motion, the Court requested updated medical records from the parties. Those records show that, since January 2022, Brown has been requesting pain management and surgery for his back condition. (*See, e.g.*, ECF No. 88-1, PageID.1156, 1154, 1151, 1148, 1138, 1136, 1118.) In earlier sick call appointments, he expressed an interest in more conservative treatment options, like physical therapy. (*Id.* at PageID.1043.) By mid-February 2022, however, Brown wanted specifically to discuss surgery plans with his doctors. (*Id.* at 1154, 1031.) Since then, his providers have repeatedly noted in his medical records the need "to restart the process again" based on his prior refusal to undergo surgery in prison. (*See id.* at PageID.1031 (April), 1022 (May), 1012 (August)). Yet Brown was not scheduled for a necessary preliminary appointment with a neurologist until months later, in September. (*Id.* at PageID.1129.) And this appointment did not result in any definite surgery date: the neurologist simply advised that Brown needed updated imaging before surgery could be scheduled.

The Court held three telephonic status conferences, seeking more information from the parties regarding Brown's treatment and insurance coverage. During the first two conferences, which were held on September 28, 2022 and November 15, 2022, Brown informed the Court that he had found healthcare providers outside of prison—at Henry Ford

Hospital—who were willing to see him immediately. He also submitted an affidavit from his mother, attesting that she would pay Brown's insurance premiums and that she was in the process of switching his current insurance (Blue Cross, which Henry Ford Hospital will not accept to cover his surgical costs) to another provider (Meridian) that would cover the treatment he needs. (ECF No. 90.) The government, meanwhile, was uncertain whether the Bureau of Prisons had approved Brown to undergo updated imaging, when that imaging would actually take place, or when surgery would be scheduled.

At the last of these telephonic status conferences, on November 21, 2022, the Court asked the parties if there had been any progress in Brown's care. The government told the Court that the Bureau of Prisons was still formulating a care plan for Brown: it had approved the updated imaging as medically necessary in October, but one month later in late November, it had yet to schedule the actual appointment. There was no estimate regarding when Brown could be scheduled for follow-up consultations and surgery. The government also told the Court that, based on Brown's need for care, the Bureau had placed a medical hold on him, making him ineligible for early release to a halfway house, which was otherwise expected by February 2023. The government explained that Brown would need to be in BOP's custody in order to be eligible for surgical care. Although the government contends the BOP has the capability to provide Brown with the medically necessary surgery within the time remaining on his sentence—or by August 2023, it could not provide any certain timeline by which either the MRI, or the surgery, would be completed.

As the Court stated in its prior order, a prisoner serving a federal sentence who needs medical care, including medically necessary surgery, has the right to receive such care while incarcerated. A mere preference to receive treatment out of custody generally does not warrant early release. Given the evidence in this record, however, showing that Brown has repeatedly attempted obtain necessary medical care while in custody without success, and in view of the significant possibility that further delays in his treatment may lead to irreversible, life-long consequences for him, the Court ultimately concludes that his case presents extraordinary and compelling reasons for a sentence reduction.

*Application of the § 3553(a) factors*

Having found that "extraordinary and compelling reasons" justify reducing Brown's sentence, the Court must also consider whether doing so would be consistent with the § 3553(a) factors. These factors include the defendant's history and personal characteristics; the nature and circumstances of his crimes; providing just punishment; affording adequate deterrence; protecting the public from further crimes by the defendant; and providing the defendant with any necessary correctional services and treatment.

The records Brown has submitted to this Court demonstrate that, while in prison, Brown has participated in rehabilitative programming, including earning a National Parenting Program Certificate. (ECF No. 57-7.) He has two children, says he plans to live with his mother and the younger of these two children if he is released, and wishes to return to his work as a manager of a car wash on recovering from his surgery. (ECF No. 57.) His convictions in this case are for non-violent, financial crimes resulting in losses under $50,000. (ECF Nos. 31, 37.) Prior to beginning his sentence in March 2020, he was on court-ordered supervision for over a year pending sentencing, during which time he complied with all court-ordered conditions of release. (ECF No. 57.)

The Court is aware that Brown has a criminal history, which comprises of mostly non-violent offenses. While his prior convictions are for crimes similar to the convictions in this case, the Court finds that any benefit served by keeping him in prison for the remainder of his sentence is outweighed by the risk of permanent damage to his physical health if he is unable to obtain the care he needs. Information publicly available from the Bureau of Prisons' Inmate Locator website states that his projected release date is in August 2023, and the government agrees that —but for the medical hold he has recently been placed on—he would be eligible for release to a halfway house in February 2023. The sentence Brown has already served, combined with the period of supervised release that will follow, appropriately "reflect[s] the seriousness of the offense," "promote[s] respect for the law," "protects the public," and "provide[s] just punishment for the offense." 18 U.S.C. § 3553(a).

*Conclusion*

For the foregoing reasons, the Court **GRANTS** Brown's Motion for Compassionate Release and reduces his sentence to time served as of the date of this decision. His period of supervised release remains three years. Upon his release from custody, Brown will be subject to the same conditions of release imposed in his original sentence.

Brown shall notify the Probation Department for the Eastern District of Michigan of his release within 24 hours and is directed to follow the instructions of the assigned probation officer. Upon entry of this order, defense counsel shall immediately contact the Probation Department to coordinate enforcement of Brown's release conditions.

**IT IS SO ORDERED.**